J. L. HOLDING Co., INC., and Another, Appellants, v. ISIDOR REIS and Others, Copartners Doing Business as I. REIS & Co., Respondents.

First Department, March 13, 1925.

**Brokers — real estate brokers — action to recover moneys from real estate brokers acting as agents of property — part of action based on alleged agreement by defendants to pay plaintiffs part of commissions to be earned by defendants if plaintiffs would exchange property owned by them for property on sale by defendants — exchange of property in New York city was made — agreement to split commissions is illegal under Real Property Law, § 442, as added by Laws of 1922, chapter 672, in effect April 15, 1922 — provision as to splitting commissions not confined to duly licensed brokers.**

In an action to recover from real estate brokers moneys alleged to have been collected by them while acting as agents of property belonging to the plaintiffs, plaintiffs are not entitled to recover for that part of the cause of action based on an alleged agreement between the defendants and the plaintiffs whereby the defendants agreed to pay the plaintiffs $5,000 from commissions which they would receive if the plaintiffs would exchange property they then owned for the property in question; both parcels being in New York city, which exchange was subsequently carried out, for said agreement to split commissions is illegal under section 442 of the Real Property Law, as added by the Laws of 1922, chapter 672, which went into effect on April 15, 1922, a few months before the agreement was made.

The fact that the defendants were not required by chapter 672 of the Laws of 1922 to procure a license to act as real estate brokers until October 1, 1922, did not hold in abeyance the operation of section 442. Said section is broad enough to cover the splitting of commissions with others than duly licensed real estate brokers.

CLARKE, P. J., dissents.

APPEAL by the plaintiffs, J. L. Holding Co., Inc., and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of May, 1924, granting defendants' motion for partial judgment on the pleadings dismissing the complaint as to part of the first cause of action. (See Civ. Prac. Act, § 476.)

*Pfeiffer & Crames [Alexander Pfeiffer* of counsel; *Harold Cohn* with him on the brief], for the appellants.

*Samuel I. Goldberg [Arnold Furst* of counsel], for the respondents.

MERRELL, J.:

It is alleged in the complaint that the plaintiff J. L. Holding Co., Inc., is a domestic corporation and the owner in fee of certain premises at 530–538 Broadway, in the borough of Manhattan, New York city; that the defendants are copartners engaged in the

First Department, March, 1925. [Vol. 212

real estate business and in the collection of rents of real property, with offices in the city of New York and doing business as I. Reis & Co. The complaint further alleges that in August, 1922, the plaintiff appointed the said defendants as its agents to manage its said premises at 530–538 Broadway, in the borough of Manhattan, and to collect and receive the rents thereof, to keep the premises in repair, and to account to the said plaintiff each month for moneys collected from said premises and the disbursements made and incurred and to turn over monthly to the plaintiff the balance that might be on hand out of said rents collected; that the defend-' ants accepted such appointment as such agents and agreed to faithfully and honestly discharge their duties in such capacity and to honestly account to the plaintiff in connection with the rents collected by them and the disbursements made; that as compensation for such services the plaintiff was to pay the defendants and the defendants might deduct from the rents collected by them a sum equal to one per cent of the amount thereof and which percentage was afterwards increased to one and one-half per cent. The complaint further alleges that the said defendants have collected large sums of money for which they have failed to account to the plaintiff and which moneys they have converted to their own use and including certain moneys from fire insurance in connection with a loss which occurred to the premises and which the defendants have also failed and neglected and refused to turn over to the plaintiff or to account therefor.

By the 6th paragraph of the complaint the plaintiff alleges that the said premises were purchased by plaintiff from the Denwood Realty Co., Inc., a New York corporation, in exchange for premises known as 1975 Creston avenue, New York city, which last-mentioned premises were then owned by the plaintiff; that the defendants acted as brokers in connection with such exchange, and that in order to induce the plaintiff to make and enter into a contract of exchange with said Denwood Realty Co., Inc., and to exchange its premises at 1975 Creston avenue, in the borough of The Bronx, for the said premises at 530–538 Broadway, the defendants agreed to and with the plaintiff that they would allow to plaintiff the sum of $5,000 out of their commissions which they would earn in connection with the exchange of the premises aforementioned, which commissions amounted to about $15,000, and that the defendants further agreed to and with the plaintiff that if they were appointed agents of the premises at 530–538 Broadway, New York city, they would credit the account of such agency with the sum of $5,000 and would in such account credit the plaintiff with said sum so that the plaintiff would receive the

sum of $5,000 from the defendants in that manner, and would *pay the same to the plaintiff as it desired and demanded the same.*

In its complaint, in the 7th paragraph thereof, the plaintiff then alleges that the terms of exchange as submitted by the defendants to the plaintiff were at first unsatisfactory and not acceptable to the plaintiff, but relying upon the said promise of the defendants as before mentioned, the plaintiff agreed to make such exchange upon the terms submitted by the defendants, and relying on defendants' said promise entered into such contract of exchange and completed and consummated the same, and that the defendants received their said commissions in connection with such exchange.

In the 8th paragraph of the complaint the plaintiff alleges that after the consummation and completion of the said contract of exchange, the plaintiff demanded of the defendants that they credit the account of the plaintiff with the sum of $5,000 agreed to be paid to plaintiff, and that the defendants pay to the plaintiff said sum of $5,000, but that the defendants have failed and refused so to do.

In the 9th paragraph of the complaint the plaintiff alleges that there is due and owing from the defendants to plaintiff a large sum of money from rents of the said premises and from the transaction above set forth, but that the plaintiff cannot state the amount thereof, as the defendants have refused, after demand, to honestly and properly account to the plaintiff therefor. It was for partial judgment dismissing so much of the plaintiff's complaint as was set forth and alleged in the 6th, 7th and 8th paragraphs of the complaint that the defendants moved and to such extent the court granted their motion by the order appealed from.

A brief memorandum was delivered·by the court in connection with the granting of said order, the court basing its decision upon the fact that the agreement set forth in said paragraphs of the complaint for the payment of the $5,000 by the defendants to the plaintiff contravened section 442 of the Real Property Law, which forbade a real estate broker splitting commissions and that such a contract was, therefore, illegal.

The appellant attacks the order of the court and urges, *first,* that the agreement set forth in the complaint was not an agreement to split commissions of the nature forbidden by section 442 of the Real Property Law; *second,* that even if the agreement came within the purview of section 442 of the Real Property Law, such agreement was made in July or `August, 1922, and was not illegal for the reason that by the act of which section 442 is a part, real estate brokers and real estate salesmen were not required to be licensed until October 1, 1922. The appellant also raises constitutional

objections to the application of section 442 to the facts in the case at bar.   (See U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.)

I think the court at Special Term correctly decided the motion addressed to it, and that the appellant is wrong on all three of its propositions.   Section 442 of the Real Property Law (as added by Laws of 1922, chap. 672) provides as follows:

" Splitting commissions.   No real estate broker shall pay any part of a fee, commission or other compensation received by the broker to any person for any service, help or aid rendered, in any place in which this article is applicable, by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate, unless such a person be a duly licensed real estate salesman regularly employed by such broker or a duly licensed real estate broker or a person regularly engaged in the real estate brokerage business in a State outside of New York."

This particular section of the Real Property Law took effect April 15, 1922.   The alleged agreement under which the plaintiff claims a payment or credit of $5,000 from defendants out of their commissions was made late in July, 1922, or early in August of that year.   The appellant argues that section 442 only applies to real estate brokers and only prohibits payments for services, help or aid rendered in the capacity of brokers or brokers' salesmen.   An examination of the statute will disclose that its inhibitions are not contained in the narrow limits which the plaintiff claims. The statute prohibits any real estate broker from paying any part of a fee, commission or other compensation received by the broker to *any person* for *any* service, help or aid rendered in any place in which the law is applicable by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate unless such person be a duly licensed real estate salesman regularly employed by such broker or a duly licensed real estate broker.   The allegation of the plaintiff in the 6th paragraph of its complaint is that the defendants agreed to allow the sum of $5,000 out of their commissions " to induce the plaintiff J. L. Holding  Co., Inc., to make and enter into the contract of exchange."   Appellant, in the brief of its counsel, states that: " This cash payment would naturally be made by the defendants out of their commissions, and in order that the defendants might earn their commissions upon the exchange and cause the same to be consummated, they agreed to such proposition."   The statute does not confine the service, help or aid to service, help or aid given by a broker or salesman.   The appellant argues that real estate brokers were not required to be licensed until October

1, 1922, and that, therefore, the section of the law was not enforcible before October first.  I do not think there is anything to this point.  These commissions were not payable by the plaintiffs. The alleged agreement was that the defendants would from their commission of $15,000, which they actually received from the Denwood Realty Co., Inc., pay that amount to the plaintiff.  The amount aforesaid was not to be deducted from commissions which the plaintiff had agreed to pay the defendants.  It seems to me this alleged agreement was within the letter and spirit of section 442 of the Real Property Law, because it is the claim of the plaintiff that the agreement was made " in order that the defendants might earn their commissions," and clearly was an agreement to split said commissions with the plaintiff.

There was no consideration whatever for the alleged agreement to pay the plaintiff $5,000 of such commissions.  The only possible consideration was the plaintiff's agreement to make the exchange. For making such exchange the defendants were to pay or credit the plaintiff with $5,000.  Such consideration moved from the defendants.  There was no consideration whatever moving from the plaintiff to the defendants for their alleged promise to pay or credit the plaintiff with the $5,000.  If the consideration was that the plaintiff enter into the agreement of exchange, then plaintiff was within the provisions of section 442 of the Real Property Law.  The plaintiff admits in its complaint that it aided the defendants to earn their commission by consenting to the exchange in order that they might earn their commissions thereon.  The alleged agreement set forth in the complaint is either without consideration, or if upon consideration, such consideration must be that the plaintiff so acted as to enable the defendants to earn their commissions, and thus brought itself within the inhibition of section 442 of the Real Property Law.

I think section 442 is broad enough in its provisions to cover the splitting of commissions with others than duly licensed real estate brokers or duly licensed real estate salesmen as specified. The Legislature, it is true, first provided for the licensing of real estate brokers by section 440-a of the Real Property Law (as added by Laws of 1922, chap. 672),* which took effect April 15, 1922, and provided for such a license on and after October 1, 1922, but had it intended that section 442 should not take effect until the licensing of brokers went into effect, it would have so specified in the act itself.  Moreover, there was nothing to prevent any one wishing to share commissions from taking out a license prior to October 1,

---

* Since amd. by Laws of 1924, chap. 579.— [REP.

1922, and it would have thus been enabled legally to have shared in such commissions. The Legislature did not prohibit a broker taking out a license before October 1, 1922, but by section 442 it did distinctly provide, in effect, that no real estate broker should split a commission with any person not duly licensed rendering service, help or aid, on or after April 15, 1922. Had it been desired that the plaintiff receive $5,000 more than the amount first offered, it could easily have been accomplished by the defendants accepting $10,000 as their commissions from the Denwood Realty Co., Inc., and the latter increasing the consideration to the plaintiff by $5,000.

The appellant's contention that to apply section 442 of the Real Property Law to the facts as alleged in the complaint would be to give said section an unconstitutional effect, seems to me to be wholly without merit. Appellant urges that such application would be subversive of the right of the individual freely to contract with reference to property rights, and that the statute should not be so construed as to prevent a property owner from entering into a contract with his broker as to the commissions which the latter should receive from the property owner for services rendered. The fallacy of appellant's argument in this respect lies in the fact that it assumes the false premise that the commissions were payable by plaintiff, whereas they were not to be paid by the plaintiff, but by the Denwood Realty Co., Inc., a third party for whom the defendants were acting. Plaintiff first employed defendants as its agents in August, 1922, after it had acquired the property at 530-538 Broadway through the aforesaid exchange. Plaintiff was induced to consummate the sale by reason of defendants' promise that if defendants were appointed agents of the premises which plaintiff would thus acquire they would credit plaintiff with said sum of $5,000 so that plaintiff would receive said sum of the defendants. and that defendants would pay the same to plaintiff upon demand. Of course, an owner of real property may freely contract with his broker that the latter will accept a sum less than the usual amount paid as commissions on similar transactions. But here the broker was not to receive his commissions from the plaintiff, but from a third party. The agreement, as alleged, was that the plaintiff agreed to exchange its Creston avenue property for the Broadway property of the Denwood Realty Co., Inc., upon defendants' promise to pay plaintiff the sum of $5,000 out of defendants' commissions. Plaintiff's acceptance of the proposition which the defendants made was induced by their promise to divide their commissions. I think the contract upon which the plaintiff complains in the 6th, 7th and 8th paragraphs of the complaint is unenforcible in law, and that the order

granting the defendants partial judgment dismissing so much of plaintiff's complaint as seeks to recover or be credited with $5,000 as set forth in said paragraphs should be affirmed, with ten dollars costs and disbursements to the respondents.

DOWLING and McAVOY, JJ., concur; CLARKE, P. J., dissents.

Order affirmed, with ten dollars costs and disbursements.