WARREN, LAMAR, Associate Judge.
The appeal herein is by the defendant from a final judgment entered on a jury verdict in an action for commissions on real estate sales.
The plaintiff alleged that as a duly licensed real estate salesman he was employed by the defendant corporation, a broker, and was registered with the Florida Real Estate Commission as salesman for his broker, the defendant; that as salesman for his broker his duties were to procure purchasers for houses and lots belonging to defendant’s principal, General Development Corporation. He further alleged that the defendant orally agreed to pay him, through the principal, five per cent of the purchase price as commission for each lot sold by the principal on which plaintiff had procured a purchaser, and two and one-half per cent of the purchase price for any house located on any property belonging to the principal; that in pursuance of such agreement, he interested numerous persons as prospective purchasers, and that certain commissions on lot and house sales made by him for his broker, the defendant, through the principal, were due from defendant, less drawing accounts received from the principal, for which he demanded judgment. Defendant’s answer in essence was a denial of the above allegations.
The judgment of the lower court must be reversed on the first point of the defendant on appeal, namely, whether under § 475.42(1) (d), Florida Statutes, F.S.A., a salesman may recover against a person registered as his broker without proving that he had a contract with the broker and that the broker had a contract with the owner of the land sold by the salesman. Two other points dealing with instructions to the jury and the admission of evidence become unnecessary to discuss in view of the decision herein.
Plaintiff failed to establish that as salesman for his broker he had any duties, that General Development Corporation was defendant’s principal, or that the defendant orally agreed to pay him commissions through such principal, as alleged.
The plaintiff’s evidence was that for the period of time involved in this litigation, he was employed as a registered real estate salesman for defendant. The circumstances surrounding his employment were that he wrote a letter asking for employment by General Development Corporation, and *716 upon an interview with one Finnegan, whom plaintiff testified was president of the corporate defendant and also general manager for the development company, and who “explained the workings of the company and the future a man would have with them,” he became very interested in accepting a job but “the only thing that kept me from taking the job, was the fact that if I worked for a land development company, that time wouldn’t count toward the apprenticeship that I must serve under an active broker.” As a result, he stated, he was hired by defendant, an active broker, and commenced work on a straight salary as a liaison or public relations man between the development company and another organization. After a few weeks, by telephone he was directed by Finnegan to go to another location and see another employee who was in control of the development company office there; this individual said he would start plaintiff with a weekly drawing account of $125 against commissions earned, explaining the commission setup to him, the same to be received by him directly from the development company. Upon being asked if he had the approval of the defendant to handle it that way, plaintiff replied, “Mr. Finnegan sent me there.” Plaintiff sold lots and houses of the development company until sometime in July, 1960. A certificate of the chairman of the Florida Real Estate Commission certified that plaintiff was in the employ of the defendant for the period involved.
In addition to his drawing account from the development company, he received some money upon his commission accrual account for sales of the property. In an effort subsequently to get the matter straightened out, he made a trip to the accounting department of the home office of the development company, he wrote a letter to the commission department asking for a complete picture of what he had earned “while I was with the company,” and he wrote Finnegan and asked him to see what he could do, all without success.
Called as an adverse witness, plaintiff testified that initially Finnegan hired him as a public relations man for the development company, painting “a very rosy picture of the future of the company and what they were doing, of the tremendous outfit, advertising and — .” He was paid weekly by company check signed by Finnegan. The question was never brought up, whether plaintiff would get commissions from the defendant; the period of his employment was not discussed. It was explained to him by Finnegan that the defendant was a private corporation of his own, “and if I liked, he would put me under the Ivy Jay banner.” He stated he was to become an employee and work for the defendant, “using the strict sense of the word employee; ” that he was to be public relations man for the development company, but he was actually employed by defendant, “insofar as my real estate license was concerned.” When he went to the new location which Finnegan said was going to be a better job for him, he was still employed by the defendant, that is, “in the sense of the law I was employed by them.” During the employment, plaintiff never made a sale outside of the development company’s property. He never made an accounting to Finnegan or the defendant of any sales; when his employment was terminated, he did not notify Finnegan. Finnegan had absolute authority over all the employees in the sales department of the development company. An objection was sustained to the question if he knew if defendant had received any commissions from the development company. Cf. Anno. — Brokers’ Contract To Share Commissions, 171 A.L.R. 1012.
It is clear from plaintiff’s evidence that initially his employment was in fact with the development company, and that such enlarged contractual arrangements as he later made were also with that company. Permitting him to be registered with the real estate commission as a salesman for the defendant was solely for the purpose of counting towards his apprenticeship; he *717 was never actively engaged as a salesman for the defendant.
There was further no effort made to show a contractual relationship between the defendant and the development company. 3 Am.Jur.2d, Agency, § 348; 5 Fla.Jur., Brokers, § IS.
Since the record reveals the absence of any contractual responsibility of the defendant to the plaintiff, the judgment is reversed.
Reversed.
SMITH, C. J., and SHANNON, J., concur.